UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:16-CV-429-CRS

**ELISE DAVIDSON,**
**Successor Administratrix of Estate of Joshua Steven Blough, et al.,**                **Plaintiffs,**

v.

**CITY OF ELIZABETHTOWN, et al.,**                **Defendants.**

## MEMORANDUM OPINION AND ORDER

Defendants City of Elizabethtown, Matthew McMillen, and Scot Richardson (collectively "Defendants") have filed a motion for entry of an order permitting them, by counsel, to conduct informal, *ex parte* interviews with medical providers of decedent Joshua Blough ("Blough") and Plaintiff Amanda Reich ("Reich") (DN 31). For the following reasons, the motion is **granted**.

## BACKGROUND

The Plaintiffs in this case, Reich, and the administrator of Blough's estate (collectively "Plaintiffs"), filed a complaint in this court on July 5, 2016 (DN 1). They allege that on or about July 7, 2015, Reich called 911 to alert authorities that she was trying to locate her then-fiancé, Blough, who had exited Reich's vehicle and was armed with a 2.5-inch pocket knife. (*Id.* at ¶ 14.) Defendant McMillen, an officer of the Elizabethtown (Kentucky) Police Department, met with Reich in response to the 911 call. (*Id.*) Plaintiffs allege that Reich informed the authorities that Blough "was in the throes of his mental illness . . . that he was afraid of the police," and that despite his possession of the pocket knife, he "was not threatening harm to her or anyone else[.]" (*Id.*) Plaintiffs allege that McMillen "assured her that the police would not hurt Mr. Blough." (*Id.*) Shortly thereafter, Reich, McMillen, and Defendant Richardson (also an Elizabethtown

Police Department officer), located Blough and approached him on foot. (*Id.* at ¶ 15.) In short, Plaintiffs allege that Blough did not threaten the officers in any way, but that when Blough did not drop his pocket knife upon being instructed to do so by the officers, McMillen and Richardson shot Blough three times, leading to his death. (*Id.* at ¶¶ 15-16.) Plaintiffs assert the following causes of action: (1) unnecessary and unwarranted use of lethal force leading to Blough's death, in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) negligence and/or gross negligence; (3) vicarious liability as to the City of Elizabethtown[1]; (4) common law battery and intentional and/or negligent infliction of emotional distress; (5) common law tort of outrage; and (6) wrongful death under KRS 411.130. (*Id.* at ¶¶ 19-31.)

In the motion now before the Court, Defendants request that the Court enter an order permitting their counsel to conduct informal, *ex parte* interviews with healthcare providers for Blough and Reich. (DN 31.) The Court notes that at the outset of the motion, defense counsel certifies that he conferred with opposing counsel in an effort to resolve the dispute without court action, but that his effort was unsuccessful. (*See id.* at 1; DN 31-1 (email of Plaintiffs' counsel stating, "I object to any *ex parte* communication with my clients' treating physicians."); Fed. R. Civ. P. 26(c)(1) (A motion for protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.").) Notwithstanding Plaintiffs' counsel's statement by email, Plaintiffs did not file a response in opposition to Defendants' motion, and, in a telephonic conference conducted on October 19, 2017, Plaintiffs' counsel stated that he did not object to the motion. *See* LR 7.1(c) ("Failure to timely respond to a motion may be grounds for granting the

---

[1] Plaintiffs initially asserted Count III against Police Chief Tracy Schiller ("Schiller") in addition to the city. Schiller has since been voluntarily dismissed as a defendant in this action. (*See* DN 38 (agreed order of partial dismissal).)

2

motion."). Despite the fact that Defendants' motion now appears to be unopposed, the Court finds that it is a good use of the Court resources to explain the reasoning behind its ruling on the motion. Specifically, as Defendants' motion (DN 31) raises little-discussed issues in this district, or, for that matter, in other jurisdictions, it appears to the Court to be advisable to discuss the reasoning supporting its conclusion. Moreover, as will be clear from the discussion below, federal statute requires a court order authorizing the type of discovery now sought by Defendants before they may lawfully seek such discovery.

## DISCUSSION

Defendants argue that an order permitting them to engage in informal, *ex parte* communications with Blough and Reich's medical providers is relevant and necessary to this action. They argue that the healthcare providers with whom they wish to speak, including physicians, nurses, EMS personnel, and other providers, "are likely to be key witnesses for Plaintiffs at trial" and possess relevant, discoverable information regarding Blough and Reich's medical conditions. (DN 31 at 4-5.) They further argue that Plaintiffs have placed Blough and Reich's medical conditions in issue in this case based on the allegations and causes of action set forth in the complaint. (*Id.* at 5-6.) Defendants contend that neither Kentucky law nor federal law prohibits the issuance of an order authorizing them to communicate with Blough and Reich's medical providers. (*Id.* at 6-8.) Finally, they argue that taking their requested approach will streamline discovery and further judicial economy in this case. (*Id.* at 8-9.)

This Court recently addressed this issue in another case, and it encourages the parties to this action to review the other opinion for a detailed discussion of the reasoning that underlies the instant memorandum opinion and order. *See Colston v. Regency Nursing, LLC*, Civil Action No.

3:16-cv-50-GNS-CHL, DN 49 (Oct. 24, 2017). As in *Colston*, in this case, the Court concludes that good cause exists to enter a qualified protective order permitting Defendants to undertake the discovery they seek. *See* Fed. R. Civ. P. 26(c) (permitting the Court to issue protective orders for good cause shown); *Peterson v. Outback Steakhouse*, 2016 U.S. Dist. LEXIS 129596, *3 (E.D. Mich. Sept. 22, 2016) (stating that the party seeking the protective order bears the burden of showing that good cause exists for issuance of the order) (citing *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001)). Additionally, before moving on, the Court notes that litigants have historically been permitted to conduct *ex parte* interviews with fact witnesses for several reasons, but primarily in order to investigate facts and curtail litigation costs by allowing litigants to assess the usefulness of a witness's potential testimony by interviewing the witness before conducting a deposition. *Caldwell v. Chauvin*, 464 S.W.3d 139, 142-43 (Ky. 2015); *see also Hopper v. Ruta*, 2013 Colo. Dist. LEXIS 274, *6 (Colo. Dist. June 18, 2013) ("Informal methods of discovery not only effectuate the goals of the discovery process but tend to reduce litigation costs and simplify the flow of information [. . . and p]ersonal interviews are an accepted informal method of discovery.") (quoting *Samms v. District Court*, 908 P.2d 520, 526 (Colo. 1995) (internal citation omitted)).

Again, as in *Colston*, the Court's conclusion is informed by the Supreme Court of Kentucky's 2015 decision in *Caldwell*. Consistent with *Caldwell*, this Court concludes that the Health Information Portability and Accountability Act of 1996 ("HIPAA") does not prohibit *ex parte* interviews with treating physicians, but it does regulate the protected information that may be disclosed in such interviews. "Among the permissible disclosures authorized by HIPAA, is the 'litigation exception,' which permits disclosure of protected health information 'in the course

4

of any judicial or administrative proceeding' either '[i]n response to an order of a court of administrative tribunal' or '[i]n response to a subpoena, discovery request, or other lawful process,' so long as additional safeguards are met."[2] *Caldwell*, 464 S.W.3d at 149 (quoting 45 C.F.R. § 164.512(e)(1)(i)-(ii)); *see Colston*, Civil Action No. 3:16-cv-50-GNS-CHL, DN 49 (Oct. 24, 2017) for a more detailed discussion of this portion of the *Caldwell* decision.

In accordance with the HIPAA litigation exception, prior to seeking *ex parte* disclosure of protected health information from a medical provider, a party must first seek authorization from the trial court. *Id.* at 153 (holding that "HIPAA's procedural prerequisites to disclosure of protected health information may only be satisfied by order of a court or administrative tribunal . . . ."). Defendants have done so here; their motion (DN 31) seeks an order of this Court authorizing, but not requiring, Blough and Reich's medical providers to produce protected health

---

[2] In full, the litigation exception provides as follows:

> 1) Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:
>
> (i) In response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or
>
> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>
> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>
> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1)(i)-(ii).

information in the context of this case. The *Caldwell* court did not explicitly dictate the permissible scope and required level of specificity for a qualified protective order like the one requested by Defendants and entered herein. The order set forth below is informed by *Caldwell*, the terms of HIPAA's litigation exception, and the scope of the proposed order filed by Defendants (DN 31-3). Specifically, the Court limits the scope of the information obtainable by Defendants to such information as is relevant to the claims and defenses asserted by the parties in this action. Additionally, while the Court deems such information discoverable in this action, it makes no ruling as to the admissibility of any communications or materials that Defendants may obtain as a result of the qualified protective order.

Finally, the Court notes that Kentucky law does not compel a different conclusion. This is so because, as is discussed in *Caldwell*, HIPAA preempts state-law privacy protections absent a state law that is more stringent than HIPAA; Kentucky does not recognize a physician-patient privilege; the American Medical Association's Code of Medical Ethics does not have the force of law such that it would render *ex parte* contacts with physicians impermissible; and Kentucky case law does not preclude litigants from conducting *ex parte* interviews of treating physicians. *Caldwell*, 464 S.W.3d at 154-58.[3]

---

[3] The following nonbinding authorities also recognize the *Caldwell* court's conclusions: *Caldwell v. Baptist Mem. Hosp.*, 2016 Tenn. App. LEXIS 389, *20-21 (Tenn. Ct. App. June 3, 2016) (citing *Caldwell*, 464 S.W.3d 148-55, for proposition that neither HIPAA nor Kentucky law prohibits ex parte interviews by defendants with plaintiffs' treating physicians among list of other cases with similar conclusions); *Ginise v. Benchmark Senior Living, LLC*, 2014 Conn. Super. LEXIS 4182, *15 n.5 (Conn. Super. Ct. Nov. 25, 2014) ("A number of jurisdictions have recognized that HIPAA does not prohibit ex parte communications between counsel for defendants and a treating health care provider (especially in a medical malpractice context), although it may impose limitations on the scope of communication in the absence of an authorization.") (citing *Caldwell*, 464 S.W.3d 139); see also 1-5 Ky. Evidence Law Handbook § 5.15 (noting that a physician is "a competent witness concerning any and all facts he may have learned as to [the patient's] physical condition while treating him privately or while examining him as to his particular injury") (quoting *H.H. Waegner & Co. v. Moock*, 197 S.W.2d 254, 256 (Ky. 1946); *id.* at n.2 (citing *Caldwell*, 464 S.W.3d 139, for the propositions that "there is no patient-physician privilege in the law of Kentucky . . . [and] that the physician's ability to disclose the plaintiff's protected health information . . . is regulated by HIPAA, so disclosure may only be permitted by order of . . . court satisfying [HIPAA]").

Based on the foregoing, the Court will grant Defendants' motion and enter the qualified protective order set forth below.

**ORDER**

IT IS HEREBY ORDERED that Defendants' motion for an order authorizing them to communicate *ex parte* with Blough and Reich's healthcare providers (DN 31) is **GRANTED**. However, the Court DECLINES to enter the proposed order filed by Defendants (DN 31-3) and instead ENTERS THE QUALIFIED PROTECTIVE ORDER SET FORTH BELOW.

**Qualified Protective Order**

Accordingly, IT IS HEREBY ORDERED that counsel of record for Defendants MAY communicate *ex parte* with healthcare providers for decedent Blough and Plaintiff Reich regarding such aspects of their medical conditions, care, and treatment as are relevant or related to any claims or defenses asserted in this action. By entry of the instant Qualified Protective Order, Blough and Reich's healthcare providers are authorized to disclose to defense counsel, verbally and in writing, in the course of informal, private, *ex parte* interviews or communications, any and all of Blough and Reich's protected health information that is relevant or related to the claims or defenses asserted in this action.

IT IS FURTHER ORDERED as follows:

1. Blough and Reich's protected health information owned, maintained, or otherwise in the custody of Blough and Reich's healthcare providers that relates to the claims or defenses asserted in this action is DISCOVERABLE.

2. Pursuant to 45 C.F.R. § 164.512(e)(1)(i) and applicable federal and Kentucky law, this Court issues the instant Qualified Protective Order AUTHORIZING, but NOT

REQUIIRNG, Blough and Reich's healthcare providers to disclose their protected health information in the course of this judicial proceeding. Such disclosure may be made through informal, private, *ex parte* interviews or communications with defense counsel. No personal representative of Blough's estate or legal counsel for Blough's estate or Reich need be present for or participate in those communications.

3. Blough and Reich's healthcare providers are AUTHORIZED to meet with and/or communicate with defense counsel their agents without first obtaining an authorization signed by Blough's personal representative or Reich and without first providing notice to Blough's personal representative or counsel for Blough's estate or Reich.

4. The parties shall mark as "CONFIDENTIAL" all records and other information provided to them by Blough and Reich's healthcare providers and shall store all such records and information in a secure location.

5. The parties shall not use or disclose the records and other information provided to them by Blough and Reich's healthcare providers for any purpose unrelated to the instant litigation.

6. The parties to this action MAY negotiate additional terms to the instant Qualified Protective Order.

7. The instant Qualified Protective Order applies to the following nonexclusive list of entities that may have provided medical care to Blough: (i) Communicare; (ii) Hardin County EMS; (iii) Hardin Memorial Hospital; (iv) Twin Lakes Regional Medical Center; (v) Lifesprings; and (vi) Rivendell Behavioral Health.

8. The instant Qualified Protective Order applies to the following nonexclusive list of persons and entities that may have provided medical care to Reich: (i) Jennifer Morgan/Associates in Counseling; (ii) Ray Begay, MD; (iii) Communicare; (iv) Twin Lakes Regional Medical Center; and (v) Hardin Memorial Hospital.

cc: Counsel of record